***The Law Offices of***
***Schwartz & Posnock***
Attorney ID 024001983
99 Corbett Way
Suite 203
Eatontown, New Jersey 07724
732-544-1460
Attorneys for Defendant Municipality of Princeton

UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAKE FREEMAN,<br><br>Plaintiff,<br><br>v.<br><br>MUNICIPALITY OF PRINCETON,<br><br>Defendant. | Civil Action No. 3:26-cv-02140-RK-RLS |

**DEFENDANT'S BRIEF IN SUPPORT OF MOTION IN LIEU OF ANSWER FOR ORDER DISMISSING COMPLAINT WITH PREJUDICE PURSUANT TO F.R.Civ.P. 12 (b)(1) and 12(b)(6)**

# TABLE OF CONTENTS

PAGE

**PRELIMINARY STATEMENT** ........................................ 1

**STATEMENT OF FACTS** ........................................ 3

**LEGAL STANDARD** ........................................ 7

A. **Standard for Dismissal Under F.R.Civ.P. 12(b)(1)** ........................................ 7

B. **Standard for Dismissal Under F.R.Civ.P. 12(b)(6)** ........................................ 9

C. **Materials That the Court May Consider in Determining the Motion** ........................................ 10

D. **Review of Claims Brought Under 42 U.S.C. Section 1983** ........................................ 10

**POINT ONE** ........................................ 11

**THE COMPLAINT MUST BE DISMISSED FOR FAILURE OF SUBJECT MATTER JURISDICTION** ........................................ 11

A. **Plaintiff's Claim Must Be Dismissed Under the "Heck" Bar** ........................................ 12

B. **Plaintiff's Tire-Chalking Theory, As Pleaded, Would Necessarily Imply the Invalidity of His Parking Conviction** ........................................ 14

C. **No Actual Case or Controversy Is Pleaded to Entitle Plaintiff to Injunctive or Declaratory Relief** ........................................ 16

C1. **Injunctive Relief** ........................................ 16

C2. **Declaratory Judgment** ........................................ 19

**POINT TWO** ........................................ 21

**THE COMPLAINT MUST BE DISMISSED BECAUSE IT FAILS TO ALLEGE A COGNIZABLE CLAIM FOR RELIEF UNDER SECTION 1983** ....................21

**CONCLUSION**....................26

# TABLE OF AUTHORITIES

**CASES CITED** **PAGE**

*Arosa Solar Energy Sys., Inc. v. Recom Solar, LLC*, Civ. No. 18-1340, 2021 WL 1196405, (D.N.J. Mar. 30, 2021) .... 8

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .... 9

*Baker v. McCollan*, 442 U.S. 137 (1979) .... 10

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .... 9

*Brunwasser v. Johns*, 95 F. App'x 409 (3d Cir. 2004) .... 18

*Buck v. Hampton Twp. Sch. Dist*, 452 F.3d 256, 3rd Cir. (2006) .... 10

*C.P. v. New Jersey Dep't of Educ*., Civ. No. 19-12807, 2020 WL 2611572, (D.N.J. May 22, 2020) .... 17

*Carpenter v. United States*, 585 U.S. 296 (2018) .... 25

*Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329 (7th Cir. 2019) .... 12

*Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600 (1979) .... 10

*Corliss v. O'Brien*, 200 Fed.Appx.80 (3d Cir. 2006) .... 20

*Cottrell v. Heritages Dairy Stores, Inc*., Civ. No. 09-1743, 2010 WL 3908567 (D.N.J. Sep. 30, 2010) .... 8

*CMR D.N. Corp. v. City of Philadelphia*, 703 F.3d 612 (3d Cir. 2013) .... 19

*DeFunis v. Odegaard*, 416 U.S. 312, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974) (per curiam) .... 16

*Donavan ex. rel. Donavan v. Punxsutawney Area School Bd.*, 336 F. 3d 211, 216 (2003) .... 16, 18

*Durham v. Kelley*, 82 F.4th 217 (3d Cir. 2023) .......................................................17

*Finkelman v. Nat'l Football League*, 810 F.3d 187 (3d Cir. 2016) .........................20

*Gibson v. Superintendent of N.J. Dep't of Law & Pub. Safety-Division of State Police*, 411 F.3d 427 (3d Cir. 2005) .......................................................11

*Gomez v. Toledo*, 446 U.S. 635 (1980)....................................................................11

*Goodmann v. People's Bank*, 209 F. App'x 111 (3d Cir. 2006) ..............................21

*Gould Elecs. Inc. v. United States*, 220 F.3d 169 (3d Cir. 2000) ..........................7, 8

*Halsey v. Pfeiffer*, 750 F.3d 273 (3d Cir. 2014).......................................................11

*Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261 (3d Cir. 2016) .................8

*Heck v. Humphrey*, 512 U.S. 477 (1994)..............................................12, 13, 14, 15

*Holiday Inns of America, Inc. v. B & B Corp.*, 409 F.2d 614 (3d Cir. 1969)..........17

*Iwanowa v. Ford Motor Co.*, 67 F. Supp. 2d 424 (D.N.J. 1999)...............................8

*J.C. v. Ford*, 674 F. App'x 230 (3d Cir. 2016) .......................................................17

*Kant v. Seton Hall Univ.*, Civ. No. 00-05204, 2009 WL 2905610, (D.N.J. Sept. 9, 2009)..................................................................................7

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 112 S. Ct. 2130, 119 L.Ed.2d 351 (1992) ....................................................................................12

*Manuel v. City of Joliet*, 580 U.S. 357 (2017) .......................................................13

*Martin v. Keitel*, 205 F. App'x 925 (3d Cir. 2006)..................................................19

*Md. Cas. Co. v. Pac. Coal & Oil Co*. 312 U.S. 270, 61 S. Ct. 510, 85 L.Ed. 826 (1941) .........................................................................................19

*New York v. Class*, 475 U.S. 106, 106 S. Ct. 960, 89 L. Ed. 2d 81 (1986) ............23

*Nguyen v. Quick Check, Store No* 129, 2013 WL 6623923 (D.N.J. Dec. 16, 2013) ....................................................................................................9

*Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006)............................8

*Pinckney v. Cofaro*, 2023 U.S. Dist. LEXIS 140245*4-5 (D.N.J., August 11, 2023)...................................................................................................10

*Powell v. McCormack*, 395 U.S. 486, 496, 89 S. Ct. 1944, 23 L.Ed. 2d 491 (1989) ........................................................................................16, 18

*Preiser v. Newkirk*, 422 U.S. 395, 95 S.Ct. 2330, 45 L.Ed.2d 272 (1975).............19

*Ridge v. Campbell*, 984 F. Supp. 2d 364 (M.D. Pa. 2013) ....................................20

*Rode v. Dellarciprete*, 845 F.2d 1195 (3rd Cir. 1988)...........................................11

*Royal v. Durison*, 254 Fed. Appx. 163 (3rd Cir. 2007) ..........................................13

*Rush v. Wiseman*, 2010 WL 1705299 ...................................................................20

*In re Samsung Data Sec. Breach Litig.*, 761 F. Supp. 3d 781 (D.N.J. 2025) ..........12

*Santiago v. Warminster Twp.*, 629 F.3d 121 (3d Cir. 2010) ..................................10

*Step–Saver Data Sys. Inc. v. Wyse Tech.*, 912 F.2d 643 (3d Cir.1990)..................19

*Thompson v. Dewine*, 7 F. 4th 521 (6th Cir. 2021) ...............................................18

*TransUnion LLC v. Ramirez*, 594 U.S. 413, 141 S.Ct. 2190, 210 L.Ed.2d 568 (2021) ............................................................................................12

*Weinberger v. Romero–Barcelo*, 456 U.S. 305 102 S.Ct. 1798, 72 L. Ed.2d 91 (1982)..............................................................................................16

*Young v. Casten*, Civ. No. 25-14857, 2025 WL 2522593 (D.N.J. Sept. 2, 2025) ....................20

*United States v. Jones*, 565 U.S. 400 (2012) ....................6, 23, 24

*United States v. Knotts*, 460 U.S. 276, 281, 103 S. Ct. 1081, 75 L. Ed. 2d 55 (1983) ....................22

**FEDERAL RULES**

28 U.S.C. 2201(a) ....................19

42 U.S.C. § 1983 .................... 2, 10, 11, 12, 13, 14, 16, 21

F.R.Civ.P. 12(b)(1) ....................7, 8, 21

F.R.Civ.P. 12(b)(6) ....................8, 9, 10, 22

U.S. CONST. art. III, § 2 ....................16

**OTHER AUTHORITIES**

*Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure* § 3533.1, at 730 (3d ed. 2008)....................18

## PRELIMINARY STATEMENT

This case is a constitutional challenge in search of a constitutional violation. Plaintiff asks this Court to declare that a parking enforcement officer's act of placing a small chalk mark on the exterior of a tire — the most visible, most public surface of a vehicle already parked on a public street — constitutes an unlawful warrantless search under the Fourth Amendment. That argument fails on multiple independent grounds, each of which warrants dismissal.

At the threshold, this Court lacks jurisdiction to hear the case at all. The claims Plaintiff asserts are either moot, premature, or speculative. The parking matters underlying this dispute have been fully resolved – apparently in the name of a Barry T. Freeman, not Plaintiff. Barry T. Freeman pleaded guilty to, or was convicted of, the underlying violations alleged in the complaint. Plaintiff was convicted of two other parking violations not referenced in his complaint, which did not involve chalking and he faces no pending enforcement action whatsoever.

He comes to this Court not with a live controversy, but with grievances about events that have already run their full course through a competent tribunal. Having never sought to suppress the evidence in Princeton Municipal Court — the proper forum and the proper moment — he now attempts to relitigate settled matters – involving tickets issued to a third party - through a federal civil rights action. That is not what the federal courts exist to do.

Equally fatal, Plaintiff's theory, if accepted, would necessarily imply that evidence of his parking convictions was obtained through unconstitutional means. He cannot have it both ways: he cannot stand convicted of overtime parking — a conviction resting entirely on the officer's observation of the chalk mark — while simultaneously seeking a federal declaration that the chalk mark itself was an illegal search. The law is clear that a civil rights plaintiff may not use a Section 1983 action as a vehicle to collaterally attack the validity of an outstanding conviction. That bar applies squarely here.

On the merits, Plaintiff's constitutional theory is equally unavailing. Tire chalking shares nothing meaningful with the invasive government surveillance the Fourth Amendment was designed to address. The chalk mark did not follow the vehicle. It did not record, transmit, or store a single piece of information. It did not reveal where the driver went after parking the car, whom he met – if anyone - what he did while away from the car, or anything about his private life. The chalk mark told the officer only one thing: that a particular car remained in a public parking space beyond the posted time limit — a fact visible to any person walking down that street. That is not surveillance. It is simple observation of an object in public view, and the Fourth Amendment imposes no warrant requirement on what the government is permitted to see with its own eyes on a public thoroughfare.

Plaintiff's comparison to landmark electronic surveillance cases is not merely unpersuasive — it is fundamentally misplaced. Those cases involved

weeks of continuous satellite tracking, thousands of pages of location data, and the construction of intimate portraits of a person's daily movements and associations. A chalk mark on a tire bears no meaningful resemblance to that kind of intrusive government monitoring.

Plaintiff also lacks standing to assert these claims in his own right. He does not own the vehicle in question. The parking citations arising from the chalking were not issued in his name. He suffered no cognizable legal injury, and his request for injunctive and declaratory relief rests entirely on the speculative possibility that he might, at some point in the future, receive a parking ticket issued in his name. Federal courts do not issue advisory opinions or enjoin hypothetical future harm.

For all of these reasons — lack of jurisdiction, the Heck bar, absence of standing, and failure to state a cognizable Fourth Amendment claim — the Complaint should be dismissed in its entirety.

## STATEMENT OF FACTS

In the Complaint, plaintiff alleges that the Municipality of Princeton ("Princeton") operates a parking enforcement program that includes both metered and non-metered on-street parking within its municipal limits. (*See* Complaint, ECF 1, at ¶ 9.) Plaintiff alleges that certain non-metered parking zones are subject to time restrictions codified in § B19-23 of the Princeton Municipal Code, which limit how long a vehicle may remain parked in each zone. (*Id.*, at ¶ 10.) Plaintiff further alleges that to enforce these time limits,

Princeton sometimes employs the practice of placing chalk marks on the tires of parked vehicles to determine whether a vehicle has exceeded the applicable time limit. (*Id*., at ¶ 11.) According to plaintiff, Princeton has never obtained a warrant prior to chalking any vehicle. (*Id*., at ¶ 15.)

Plaintiff alleges that he regularly parks a gray Mazda sedan (the "Vehicle") within Princeton's municipal limits. (*Id*., at ¶ 25.) Plaintiff does not allege that the Vehicle is registered in his name or that the Vehicle belongs to him. A municipal court public case search discloses that only two parking tickets were issued or resolved in plaintiff's name. (Posnock Cert., ¶¶ 3, 4, 6, 8; Shapiro Cert., ¶¶ 1-2). Both tickets were resolved prior to filing the complaint. (*Id*.). Neither of the two tickets in plaintiff's name is mentioned in the complaint, and neither involves chalking. (Posnock Cert., at ¶¶ 4-8).

The complaint does not allege that there are open parking tickets against plaintiff. Additional Princeton parking tickets referenced in a Municipal Court case search were issued to one Barry Freeman. (Posnock Cert., ¶9). It is not known to defendants what, if any relationship Barry Freeman may have to the plaintiff. (*Id*.).

Plaintiff alleges that he regularly commutes from his apartment on the Princeton University campus to his office at Sherrard Hall and, because University parking lots near his office are unavailable to him, he routinely parks in nearby non-metered time-limited parking zones. (*See* Complaint, ECF 1, at ¶¶ 28–29.) Plaintiff alleges that he never consented to Princeton chalking the

Vehicle, nor has any other person done so on his behalf. (*Id*., at ¶ 26.) The complaint does not allege that the registered owner of the Vehicle objected to chalking.

Plaintiff alleges that he directly observed the Vehicle chalked on three occasions. According to plaintiff, on November 5, 2024, the Vehicle was chalked and a parking ticket was issued for an alleged violation of § B19-23 of the Princeton Municipal Code. (*Id*., at ¶ 33(a).) According to plaintiff, on February 7, 2025, the Vehicle was chalked while parked in a non-metered time-limited zone. (*Id*., at ¶ 33(b).) On October 20, 2025, Plaintiff alleges that he observed that the Vehicle had been chalked while at least one nearby vehicle in the same zone had not been chalked. (*Id*., at ¶ 32.) Plaintiff claims the Vehicle was chalked on additional occasions beyond these three directly observed instances. (*Id*., at ¶ 34.) In all instances, Plaintiff alleges that Princeton had no warrant, probable cause, or individualized suspicion of wrongdoing prior to chalking the Vehicle, and the decision to chalk was left entirely to the parking enforcement officer's discretion. (*Id*., at ¶¶ 35–37.).

Plaintiff alleges that Princeton's chalking practices are systematic and ongoing. Plaintiff alleges that records produced in response to Plaintiff's discovery request show that Officer Glasson — the parking enforcement officer who issued the November 5, 2024 ticket — engaged in chalking on at least seventeen streets across five separate dates between October 17, 2024, and November 5, 2024. (*Id*., at ¶ 22.) Plaintiff alleges that Princeton's employees

were aware of Officer Glasson's chalking activities, and he was neither acting as a rogue employee nor engaging in an isolated practice. (*Id.*, at ¶ 23-24.) Plaintiff further alleges that Princeton has actively supported its officers' chalking activities, including by purchasing chalking-related equipment. (*Id.*, at ¶ 24.) According to the complaint, since 2020, Princeton has not disciplined any parking enforcement agent in connection with the chalking of any vehicle. (*Id.*, at ¶ 17.) Plaintiff alleges that Princeton gives its agents broad, standardless discretion as to which vehicles to chalk and provides no training to guard against arbitrary or capricious selection. (*Id.*, at ¶¶ 18–19.), and that since 2020, Princeton has received a substantial sum of money because of its chalking practices and maintains a financial interest in their continuation. (*Id.*, at (¶ 16.)

Plaintiff alleges that Princeton's chalking constitutes a warrantless, physical trespass upon his private property for surveillance purposes, in violation of the Fourth Amendment as articulated in *United States v. Jones*, 565 U.S. 400 (2012), and its progeny. (*Id.*, at ¶¶ 38–41.) Plaintiff further alleges that no recognized exception to the Fourth Amendment's individualized suspicion requirement applies to Princeton's chalking program. (*Id.*, at ¶¶ 45.)

According to the complaint, plaintiff continues to park in non-metered time-limited zones as part of his daily routine and contends he faces a credible and ongoing threat of future warrantless chalking absent judicial intervention. (*Id.*, at ¶¶ 30, 44.). Plaintiff includes no facts in his complaint to demonstrate that his whereabouts or activities were tracked as a result of the chalking.

Plaintiff alleges no facts to establish that any surveillance was directed at him, nor that by chalking the vehicle, the Princeton authorities collected or attempted to collect information regarding his location, nor what he was doing while away from the Vehicle. Nothing in Plaintiff's complaint alleges that Princeton parking authorities were aware of who parked the Vehicle or who drove it away. None of the tickets mentioned in the complaint were issued in Plaintiff's name. (Posnock Cert., ¶3-8).

The two tickets for which Plaintiff was found guilty in the Princeton Municipal Court were charged pursuant to Princeton Municipal Code 19.21(H), which relates to overtime parking at a meter. (Posnock Cert., ¶4, 6). Both cases have resolved completely. (Posnock Cert., ¶¶ 4, 6; Shapiro Cert., ¶¶ 1-2).

The chalking statute which forms the basis for Plaintiff's complaint is Princeton Municipal Code section B19.23 (*See* Complaint, ECF 1, at ¶ 10,33.). While an individual named Barry Freeman entered guilty pleas pursuant to this statute, Plaintiff has never litigated a parking ticket in which he was charged with this offense. (Posnock Cert., ¶¶ 3, 4, 6, 8).

There are no pending cases before Princeton Municipal Court in which Plaintiff is a defendant. (Posnock Cert., ¶3).

In addition to injunctive and declaratory relief, addressed *infra*, Plaintiff seeks attorney's fees. "It is well settled that a pro se plaintiff cannot obtain a fee award for representing him or herself." *Kant v. Seton Hall Univ*., Civ. No. 00-05204, 2009 WL 2905610, at *3 (D.N.J. Sept. 9, 2009).

# LEGAL STANDARD

## A. Standard for Dismissal Under F.R.Civ.P. 12(b)(1)

Rule 12(b)(1) permits a defendant to move at any time to dismiss the complaint for lack of subject-matter jurisdiction on either facial or factual grounds. *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000).

A facial challenge asserts that "the complaint, on its face, does not allege sufficient grounds to establish subject matter jurisdiction." *Iwanowa v. Ford Motor Co.*, 67 F. Supp. 2d 424, 438 (D.N.J. 1999). In analyzing a facial challenge, a court "must only consider the allegations of the complaint and documents . . . attached thereto, in the light most favorable to the plaintiff." *Gould Elecs. Inc.*, 220 F.3d at 176. "A court considering a facial challenge construes the allegations in the complaint as true and determines whether subject matter jurisdiction exists." *Arosa Solar Energy Sys., Inc. v. Recom Solar, LLC*, Civ. No. 18-1340, 2021 WL 1196405, at *2 (D.N.J. Mar. 30, 2021).

A factual challenge, on the other hand, "attacks allegations underlying the assertion of jurisdiction in the complaint, and it allows the defendant to present competing facts." *Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 268 (3d Cir. 2016). The "trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case" and "the plaintiff will have the burden of proof that jurisdiction does in fact exist." *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).

"Therefore, a 12(b)(1) factual challenge strips the plaintiff of the protections and factual deference provided under 12(b)(6) review." *Hartig Drug Co.*, *supra*., at 268. Regardless of the type of challenge, the plaintiff bears the "burden of proving that the court has subject matter jurisdiction." *Cottrell v. Heritages Dairy Stores, Inc*., Civ. No. 09-1743, 2010 WL 3908567, at *2 (D.N.J. Sep. 30, 2010) (citing *Mortensen*, 549 F.2d at 891).

**B. <u>Standard for Dismissal Under F.R.Civ.P. 12(b)(6)</u>**

To survive a motion to dismiss under F.R.Civ.P. 12(b)(6) "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To demonstrate "facial plausibility," Plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The facts cannot be mere "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," and the Court need not credit a plaintiff's "bald assertions," or "bald conclusions." *Ashcroft*, *supra*, 556 U.S. at 678; *Nguyen v. Quick Check, Store No* 129, 2013 WL 6623923, at *2 (D.N.J. Dec. 16, 2013) (in deciding a motion to dismiss, the court is "free to ignore legal conclusions or factually unsupported accusations which merely state that 'the-defendant-unlawfully-harmed-me.'").

More specifically, to determine the sufficiency of a complaint, a court must: (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-plead factual allegations" in the complaint "plausibly give rise to an entitlement for relief." *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010).

## C. Materials That the Court May Consider in Determining the Motion

In evaluating a motion to dismiss under F.R.Civ. P. 12(b)(6), the court ". . . may consider documents that are attached to or submitted with the complaint, and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, and items appearing in the record of the case." *See Pinckney v. Cofaro*, 2023 U.S. Dist. LEXIS 140245*4-5 (D.N.J., August 11, 2023), quoting *Buck v. Hampton Twp. Sch. Dist*, 452 F.3d 256, 260 3rd Cir. (2006). These materials will include the documents entered into evidence in the various proceedings in the Municipality of Princeton Municipal Court, the certified transcripts of the municipal court proceedings, and Municipal Court case searches.

## D. Review of Claims Brought Under 42 U.S.C. Section 1983

42 U.S.C. § 1983 is not a source of substantive rights, but rather a vehicle by which rights conferred only by the Federal Constitution and federal laws

may be vindicated. *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617-18 (1979); *Baker v. McCollan*, 442 U.S. 137, 144, at n. 3 (1979).

"To state a claim under section 1983, a plaintiff must demonstrate that 'some person has deprived him of a federal right . . . [and] that the person who has deprived him of that right acted under color of state or territorial law.'" *Halsey v. Pfeiffer*, 750 F.3d 273, 290 (3d Cir. 2014) (quoting *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)). "Thus, to state a claim under § 1983, the plaintiff must indicate: (1) of what constitutional or federal right he was deprived, and (2) how he was deprived of that right under color of state law." *Gibson v. Superintendent of N.J. Dep't of Law & Pub. Safety-Division of State Police*, 411 F.3d 427, 433 (3d Cir. 2005).

A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207-1208 (3rd Cir. 1988)

## **POINT ONE**

## **THE COMPLAINT MUST BE DISMISSED FOR FAILURE OF SUBJECT MATTER JURISDICTION**

Plaintiff's claims must be dismissed because the Complaint does not allege an actual case or controversy, as it fails to identify any concrete, present harm that the Court could remedy through injunctive or declaratory relief. All the underlying Princeton parking violations alleged in the complaint have been resolved. Plaintiff – or Barry T. Freeman, in whose name the referenced tickets were issued - either pleaded guilty to or was convicted after trial on each summons.

Dismissal is appropriate because the Court lacks subject matter jurisdiction over Plaintiff's claims. *In re Samsung Data Sec. Breach Litig.*, 761 F. Supp. 3d 781, 790 (D.N.J. 2025). Plaintiff failed to establish (1) "that he [or she] suffered an injury in fact that is concrete, particularized, and actual or imminent;" (2) "that the injury was likely caused by the defendant;" and (3) "that the injury would likely be redressed by judicial relief." *Id.*, citing *TransUnion LLC v. Ramirez*, 594 U.S. 413, 422–23, 141 S.Ct. 2190, 210 L.Ed.2d 568 (2021) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S. Ct. 2130, 119 L.Ed.2d 351 (1992)). The Court in *Samsung Data Breach* continued that "If 'the plaintiff does not claim to have suffered an injury that the defendant caused and the court can remedy, there is no case or controversy for the federal court to resolve. *Id.*, at 790, citing ' " *TransUnion*, 594 U.S. at 423, 141 S. Ct. 2190 (quoting *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 333 (7th Cir. 2019)). "The injury must be " 'concrete'—that is, 'real, and not abstract.' " *Id.* at 790, citing *TransUnion*, supra., at 424.

### A. <u>Plaintiff's Claim Must Be Dismissed Under the "Heck" Bar</u>

A plaintiff may not recover damages under 42 U.S.C. § 1983 for an alleged constitutional violation if success on the civil claim would *necessarily imply* the invalidity of an outstanding criminal conviction. *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). In a section 1983 suit to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, the plaintiff must, as a threshold matter, show that there has been a "favorable termination" of his prior proceedings by demonstrating that "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *See Royal v. Durison*, 254 Fed. Appx. 163, 165 (3rd Cir. 2007), citing *Heck*, 512 U.S. at 486-87.

A plaintiff who cannot make that showing has no cognizable § 1983 damages claim. *Id.*

The *Heck* rule is rooted in the principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments. *Id.* at 486. Permitting such collateral attacks would create the intolerable anomaly of a § 1983 plaintiff recovering civil damages premised on conduct a competent court of criminal jurisdiction has already adjudicated

lawful — or, at minimum, has never been asked to disturb through proper channels. *Id.*

The Supreme Court has recognized that not every Fourth Amendment claim is automatically barred by *Heck*. In *Manuel v. City of Joliet*, 580 U.S. 357 (2017), the Court acknowledged that some Fourth Amendment damages claims — including unreasonable-search claims — may proceed even when the plaintiff's underlying conviction remains outstanding, because success on the Fourth Amendment theory does not *always* negate the validity of the conviction. The critical inquiry is whether the *specific* Fourth Amendment theory advanced, if proven, would undermine an element of the offense of conviction or otherwise necessarily imply that the conviction is invalid. If it would, the claim is barred absent a favorable termination. *Id.*; *see also Heck*, 512 U.S. at 487 n.7 (using the example of an unreasonable search claim to illustrate when the *Heck* bar would *not* apply — i.e., where the § 1983 claim, even if successful, would leave the conviction intact).

Thus, the outcome of the *Heck* analysis in Fourth Amendment cases is not categorical but fact-specific: it depends entirely on how the plaintiff's theory is framed and what a judgment in his favor would necessarily say about the validity of the conviction he now holds. As the Third Circuit has applied this framework, the dispositive question is whether the unlawful-search or unlawful-seizure theory, if proven, would undermine an element of the offense of

conviction. If it would, *Heck* bars the claim unless favorable termination is shown.

**B. <u>Plaintiff's Tire-Chalking Theory, As Pleaded, Would Necessarily Imply the Invalidity of the Parking Conviction</u>**

Applying this framework to the facts here, Plaintiff's § 1983 claim cannot survive *Heck*. Plaintiff was found guilty in Princeton Municipal Court of overtime parking (in two cases that remain unreferenced in his complaint). He has not invalidated any Princeton parking conviction.

Plaintiff nonetheless asks this Court to declare that the parking enforcement officer's act of placing a chalk mark on the Vehicle's tire constituted unlawful surveillance and an unconstitutional warrantless search of the Vehicle in violation of the Fourth Amendment, and to award him nominal damages arising from that alleged constitutional violation. The core of his complaint is that the chalk mark was the investigative instrument through which the officer gathered the evidence — specifically, the mark's continued presence on the tire after two hours — that directly established the overtime-parking offense and led to the issuance of the parking summons to which someone named Barry Freeman pleaded guilty. Barry Freeman never invalidated the conviction.

This is precisely the type of claim *Heck* forbids. The entire evidentiary foundation of the overtime-parking conviction was the officer's observation that the chalk mark remained on the tire after the permitted period had elapsed.

Without the chalking, there is no marking; without the marking, there is no observation; without the observation, there is no violation and no conviction. If Plaintiff were to succeed in establishing that the chalking constituted an unlawful search under the Fourth Amendment, that judgment would carry the inescapable implication that the evidence supporting the conviction was obtained through unconstitutional means — and that the conviction itself rests on tainted ground. That is a collateral attack on the validity of the outstanding conviction in everything but name, and *Heck* does not permit it. *Heck*, 512 U.S. at 487.

Because Plaintiff's § 1983 Fourth Amendment claim, if successful, would necessarily imply the invalidity of the outstanding overtime-parking conviction— a conviction of Barry Freeman, as opposed to Plaintiff -- that has never been reversed, expunged, or otherwise invalidated, his complaint is premature *at best* and jurisdictionally barred at worst under *Heck v. Humphrey*. The complaint should be dismissed.

### C. **No Actual Case or Controversy Is Pleaded to Entitle Plaintiff to Injunctive or Declaratory Relief**

The Constitution limits the district court's jurisdiction to the adjudication of actual cases and controversies. *Donavan ex. rel. Donavan v. Punxsutawney Area School Bd.*, 336 F. 3d 211, 216 (2003), citing U.S. CONST. art. III, § 2, *DeFunis v. Odegaard*, 416 U.S. 312, 316, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974) (per curiam). "The availability of declaratory [and injunctive] relief depends on

whether there is a live dispute between the parties." *Id.*, at 216, citing *Powell*, *supra.*, at 517-518.

**C1. <u>Injunctive Relief</u>**

Equitable relief is not granted as a matter of course, see *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 311-312, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982). As set forth in *Holiday Inns of America, Inc. v. B & B Corp.*, 409 F.2d 614, 618 (3d Cir. 1969),

> . . . we must limit the use of injunctive relief to situations where it is necessary to prevent immediate and irreparable injury. The dramatic and drastic power of injunctive force may be unleashed only against conditions generating a presently existing actual threat; it may not be used simply to eliminate a possibility of a remote future injury or a future invasion of rights, be those rights protected by statute or by the common law.

Plaintiff has not alleged any actual threat of harm, no less irreparable harm. The sheer possibility that something might happen in the future (e.g., that he may be issued a ticket in his name at some time in the future on another matter) is rank speculation and is not actionable. Plaintiff therefore lacks standing to pursue the injunctive relief he seeks because he has not plausibly alleged that he is substantially likely to suffer an injury in the future. See *Durham v. Kelley*, 82 F.4th 217, 226 (3d Cir. 2023) ("To satisfy the standing and 'case or controversy' requirements of Article III, a party seeking prospective relief 'must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future.'") (internal citations omitted); *J.C. v. Ford*, 674 F. App'x 230, 233 (3d Cir. 2016) ("As [the plaintiff] has not

alleged that there is any 'real and immediate' threat that he will be injured by the actions which he seeks to have enjoined, he lacks standing to bring his claims for prospective injunctive relief."); see also *C.P. v. New Jersey Dep't of Educ*., Civ. No. 19-12807, 2020 WL 2611572, at *11 (D.N.J. May 22, 2020) ("Where a plaintiff seeks an injunction, his susceptibility to continuing injury is of particular importance—'[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.'" (quoting 13B *Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure* § 3533.1, at 730 (3d ed. 2008)).

Indeed, the Municipal Court cases in which Plaintiff was the named defendant (which are not referenced in this Complaint), as well as the cases referenced in the complaint, for tickets which appear to have been issued to one Barry Freeman, concluded prior to Plaintiff bringing the instant case, so any future harm is purely speculative. Such speculation about a future injury is insufficient to establish standing. *See Brunwasser v. Johns*, 95 F. App'x 409, 411 (3d Cir. 2004) (noting that "fear of a possible future consequence that is merely speculative is not an injury in fact and thus is not sufficient to confer standing").

"[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Donavan*, *supra*., citing *Powell v. McCormack*, 395 U.S. 486, 496, 89 S. Ct. 1944, 23 L.Ed. 2d

491 (1989). The ability of a court to grant effective relief is at the heart of the mootness doctrine. *Donavan*, *supra*., at 216.

Thus, a request for an injunction tied to past events is moot. *Thompson v. Dewine*, 7 F. 4th 521, 524 (6th Cir. 2021). In this case, there was no present or past controversy between plaintiff and the defendants.

**C2. <u>Declaratory Judgment</u>**

The Declaratory Judgment Act gives the court the power to make a declaration regarding " 'the rights and legal relations of any interested party seeking such declaration,' 28 U.S.C. 2201(a); it does not require the court exercise that power." *Step–Saver Data Sys. Inc. v. Wyse Tech*., 912 F.2d 643, 647 (3d Cir.1990). "The discretionary power to determine the rights of parties before injury has actually happened cannot be exercised unless there is a legitimate dispute between the parties." *Id*. (Emphasis added). The basic question is "whether the facts alleged, under all circumstances, show that there is a substantial controversy, between parties having adverse legal interest, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Dewine*, *supra*., at 524, citing *Preiser v. Newkirk*, 422 U.S. 395, 402, 95 S.Ct. 2330, 45 L.Ed.2d 272 (1975) (emphasis altered) (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co*. 312 U.S. 270, 273, 61 S. Ct. 510, 85 L.Ed. 826 (1941).

Plaintiff lacks standing to pursue the declaratory relief outlined in his Complaint. "To satisfy the standing and 'case or controversy' requirements of

Article III, a party seeking a declaratory judgment 'must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future.'" *Martin v. Keitel*, 205 F. App'x 925, 928 (3d Cir. 2006); see also *CMR D.N. Corp. v. City of Philadelphia*, 703 F.3d 612, 628 (3d Cir. 2013) ("The purpose of a declaratory judgment is to 'declare the rights of litigants.' The remedy is thus by definition prospective in nature."). Plaintiff's claim for declaratory relief fails to meet this standard. Plaintiff's claims are purely speculative and insufficient for standing. *See Young v. Casten*, Civ. No. 25-14857, 2025 WL 2522593, at *6 (D.N.J. Sept. 2, 2025) (dismissing claims for declaratory relief where the plaintiff's "requests for declaratory relief [were] either grounded in past harm or fail[ed] to show a likelihood of future harm").

Declaratory judgment is an inappropriate remedy where, as here, it is used only to adjudicate past conduct. *Ridge v. Campbell*, 984 F. Supp. 2d 364, 373 (M.D. Pa. 2013), citing *Corliss v. O'Brien*, 200 Fed.Appx.80, 84 (3d Cir. 2006). A court should deny a request for declaratory relief where plaintiff is not seeking declaratory relief in the true legal sense. *Ridge*, supra., at 373-374, citing *Corliss*, supra. at 84 (holding that the criminal pro se plaintiff's attempt to have a federal court "declare" that another judge violated his constitutional rights is not legally cognizable); see also *Rush v. Wiseman*, 2010 WL 1705299, *11 (finding that declaratory relief is unavailable where the plaintiff sought a declaration that a federal judge, while acting in her official capacity, conspired to violate the plaintiff's rights).

Given that plaintiff ties his demands for injunctive and declaratory relief to speculative future events, and since the complaint fails to identify any pending matters, no relief is available.

When, as here, the Plaintiff fails to establish Article III standing, the court lacks subject matter jurisdiction, *Finkelman v. Nat'l Football League*, 810 F.3d 187, 195 (3d Cir. 2016), and dismissal is required, *Goodmann v. People's Bank*, 209 F. App'x 111, 113 (3d Cir. 2006); Fed. R. Civ. P. 12(b)(1).

## POINT TWO

## THE COMPLAINT MUST BE DISMISSED BECAUSE IT FAILS TO ALLEGE A COGNIZABLE CLAIM FOR RELIEF UNDER SECTION 1983

Plaintiff's Complaint rests entirely on the assertion that his constitutional rights were violated when Princeton traffic enforcement officers placed a chalk mark on the tire of a vehicle he claims to have parked.

Plaintiff characterizes the alleged chalking of tires as a "surveillance tool on Freeman's movements" (See Complaint, ECF 1, at ¶¶ 27, 48-50)) "to gather information as well as conducting non-overt surveillance on the movement or non-movements of vehicles" (*Id*., at ¶¶ 48 - 50); constituting a Fourth Amendment violation lacking a valid warrant, consent of owners, or exigent circumstances (*Id*., at ¶¶ 49). The Complaint does not plead facts sufficient to allege a constitutional injury.

No surveillance of Plaintiff himself occurred or is alleged. There is no claim that once Plaintiff left the vehicle, he was followed or tracked. Plaintiff

does not claim that Princeton authorities made any effort to determine his whereabouts, movements, or activities after parking or after chalking. Plaintiff does not allege that defendants watched to see if and when Plaintiff returned to the car, nor who was driving when the car was retrieved. He does not allege that the car's interior was itself searched.

These alleged violations purportedly occurred on November 5, 2024, and February 7, 2025 (*Id.*, at ¶¶ 20-21, 32). However, as set forth above, public records demonstrate that no parking citations were issued in Plaintiff's name, nor were any citations subsequently adjudicated against him arising from those dates. Plaintiff posits his relief, in part, on his allegation that the owners of the cars failed to consent to the chalking (*Id.*, at ¶. 49). Those same public records demonstrate that Plaintiff is not the owner of the vehicles involved.
Given that he is not the owner of any car referenced in the Complaint, he cannot meet the pleading threshold to survive a Federal Rule of Civil Procedure 12(b)(6) motion. Plaintiff fails to allege a cognizable injury or actionable claim, and dismissal is warranted.

Under the Fourth Amendment, ordinarily a "person traveling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movement from one place to another." *United States v. Knotts*, 460 U.S. 276, 281, 103 S. Ct. 1081, 1085, 75 L. Ed. 2d 55 (1983). There is a "lesser expectation of privacy in a motor vehicle because its function is transportation

and it seldom serves as one's residence or as the repository of personal effects." *Id*.

The vehicle referenced in the Complaint was parked on a public roadway, not a driveway. It was visible to anyone in the vicinity – pedestrians, other drivers, business owners, and residents. The car was in a zone expressly designated and marked for regulated, time-limited parking, thereby placing every user of that space on notice of government oversight. The car was thus subject to municipal regulation, as the driver entered into a relationship with the government by parking in that regulated space. A vehicle "has little capacity for escaping public scrutiny. It travels public thoroughfares where both its occupants and its contents are in plain view." *Id*. Additionally, "it is unreasonable to have an expectation of privacy in an object required by law" to be visible from the exterior of the vehicle because the "exterior of a car, of course, is thrust into the public eye, and thus to examine it does not constitute a search." *New York v. Class*, 475 U.S. 106, 114, 106 S. Ct. 960, 89 L. Ed. 2d 81 (1986).

Plaintiff cites to *United States v. Jones*, 565 U.S. 400 (2012) in support of his claim that merely placing a mark on an automobile's tire – the most externally visible component of a vehicle already sitting in public view - constitutes a Fourth Amendment violation. *Jones* is factually distinguishable from the present case. In *Jones*, the Supreme Court held that attaching and utilizing a GPS tracking device to the underside of a vehicle constituted a

Fourth Amendment search. The police in Jones not only installed the device, but for the following 28 days, used it to track the vehicle's every movement – and even replaced the device's battery when the vehicle was parked in a second location. By means of satellite signals, the authorities tracked the vehicle's location within 50 to 100 feet and communicated that data by cellular phone to a government computer. During the 4-week period, more than 2000 pages of data regarding the defendant's movements were generated.

The GPS device used in Jones:

- Was attached to the vehicle and remained with it;
- Continuously transmitted the vehicle's location over time and distance;
- Revealed where the driver went, what routes he took, and mapped his patterns of movement; and
- Gathered information that the driver had no opportunity to observe or counter.

By contrast, a chalk mark on a tire – as here:

- Was placed on the exterior surface of a tire — the most publicly visible part of the vehicle;
- Recorded nothing, transmitted nothing, and stored nothing;
- Did not follow the vehicle or the driver anywhere;
- Merely allowed an officer to determine, at a later point in the same public location, whether the car had moved.

The chalk mark is, in practical and legal terms, no different from an officer looking at the car — which requires no Fourth Amendment justification whatsoever.

Critically, the facts of this case reveal nothing private about the driver. The complaint does not allege that the chalk mark recorded information about where the driver went after parking, no information about what the driver did, whom he met, or what establishments he visited, no information about the driver's identity, his movements, or behavior, and no information about what, if anything, was inside the vehicle.

The only fact produced by the tire chalking and subsequent observation was this: a particular car remained in a particular public parking space for more than two hours. That is not private information. It is information visible to any person standing on the street. The government learned nothing about the driver — only about the car, which, as previously noted, holds no constitutional rights of its own.

This stands in stark contrast to the cases where the Supreme Court has found Fourth Amendment violations based on the aggregation of location data revealing intimate details of a person's life. *Carpenter v. United States*, 585 U.S. 296 (2018), concerned seven days of continuous cell-site location data painting a "detailed chronicle" of a person's movements. The chalking of a tire in a single parking space on a single occasion is not remotely comparable.

Even if there were some minimal privacy interest to be recognized, the governmental interest at stake is substantial and the means employed are the least intrusive imaginable. Municipal governments have long and unquestioned authority to regulate parking on public streets. Time-limited parking zones serve legitimate public interests: ensuring turnover so that businesses receive customers, preventing long-term vehicle storage on public thoroughfares, and managing traffic flow. These are classic exercises of police power.

The chalk mark is the minimum necessary intrusion to accomplish the regulatory purpose. The municipality did not follow the driver, obtain cellular data, deploy cameras or electronic surveillance, run the license plate through a law enforcement database for investigative purposes, or enter the vehicle or examine its contents. It placed a small mark on a tire, walked away, and returned. The proportionality between the governmental interest and the degree of intrusion could not be more favorable to the municipality.

## CONCLUSION

For the foregoing reasons it is respectfully requested that the complaint be dismissed, with prejudice, as against the Municipality of Princeton.

Dated: April 6, 2026

SCHWARTZ & POSNOCK
Attorneys for Defendants

/s/ David A. Schwartz
By: ______________________________
DAVID A. SCHWARTZ