**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JAKE FREEMAN,<br><br>Plaintiff,<br><br>v.<br><br>MUNICIPALITY OF PRINCETON,<br><br>Defendant. | Civil Action No. 26-2140 (RK) (RLS)<br><br>**OPINION** |

**KIRSCH, District Judge**

**THIS MATTER** comes before the Court upon the Motion to Dismiss by Defendant Municipality of Princeton ("Princeton" or "Defendant"), brought under Federal Rules of Civil Procedure ("Rule") 12(b)(1) and 12(b)(6). ("MTD," ECF No. 9.) *Pro se* Plaintiff Jake Freeman ("Plaintiff") opposed the Motion, ("Opp.," ECF No. 11), and Defendant replied, ("Reply," ECF No. 18). Plaintiff also filed a sur-reply with leave of Court. ("Sur-Reply," ECF No. 20-1.) Having considered the parties' submissions, the Court resolves the pending Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Defendant's Motion is **GRANTED**.

## I. BACKGROUND

Plaintiff, a student at Princeton University who avers that he has an office, for some unstated purpose, on campus, alleges that Defendant's parking enforcement practice of placing a chalk mark on the tires of parked vehicles constitutes an unreasonable warrantless search under the Fourth Amendment. (*See generally* "Compl.," ECF No. 1.) Plaintiff asserts that Princeton's "chalking" practice, used to enforce parking time limits in various unmetered zones throughout the Municipality, "violated [his] civil rights and abused the limitations put on the power of the

government (under the Constitution).” (*Id.* ¶ 2.) Plaintiff alleges that because he “continues to park in such zones as part of his daily routine,” he is at risk of “future chalking absent judicial intervention.” (*Id.* ¶ 44.) Plaintiff’s single-count Complaint under 42 U.S.C. § 1983 (“Section 1983”) thus seeks declaratory and injunctive relief prohibiting future chalking, as well as nominal and “disgorge[ment]” damages. (*Id.* ¶¶ 48–54.) However, for the reasons explained below, Plaintiff’s claim fails at the threshold. Based on publicly available municipal court records, it is not Plaintiff, but rather another person—Barry T. Freeman—who appears to have been chalked and ticketed. Without a *personal* Fourth Amendment injury, Plaintiff does not have standing to pursue his Section 1983 claim against Princeton’s *de minimis* chalking practice.

### A. PLAINTIFF’S ALLEGATIONS

Plaintiff’s allegations arise from Defendant’s time limit enforcement of its nonmetered, on-street parking zones. (Compl. ¶ 10); “Municipality of Princeton, NJ,” *eCode360*, Borough Code, Ch. B19, Art. XI, § B19-23, https://ecode360.com/36793217#36793217 (hereinafter “Section B19-23” or “§ B19-23”) (codifying relevant nonmetered zones and maximum parking durations for those zones). Plaintiff alleges that Princeton enforces its parking limits in these nonmetered zones by “sometimes plac[ing] chalk on the tires of vehicles . . . .” (Compl ¶ 11.) After a chalked car fails to move within the applicable time limits for the zone, Plaintiff alleges that “parking enforcement officer[s]” may issue a parking ticket. (*Id.* ¶ 4); *see also Verdun v. City of San Diego*, 51 F.4th 1033, 1037 (9th Cir. 2022) (discussing “tire chalking’s nearly one-hundred-year history as a parking enforcement tool”). Plaintiff asserts, without specifics, that “[s]ince 2020, Princeton has received a substantial sum of money because of their chalking practices” and “has a strong financial interest in the use of chalking for revenue generation and general law enforcement

purposes."[1] (Compl. ¶ 16.)

Plaintiff alleges that he "routinely drives and parks a gray Mazda sedan" in the "time-limited non-metered zones within Princeton" as part of his commute to his office on Princeton University's campus.[2] (*Id.* ¶¶ 25, 28, 30.) Despite never "giv[ing his] consent to Princeton," Plaintiff alleges that this gray Mazda sedan was "physically contacted and marked by municipal agents on multiple occasions," and that he has "many times observed parking enforcement agents engaging in the practice of chalking." (*Id.* ¶¶ 26–27, 31.) Of course, Plaintiff does not contend that the chalking, presumably biodegradable, damaged the vehicle in any way or affected the value of the property.

The Complaint specifies three instances in which Plaintiff observed that the gray Mazda had been chalked.[3] First, on November 5, 2024, Plaintiff alleges that that he observed that the gray Mazda had been chalked and that "a ticket was issued for a purported violation of § B19-23," the portion of the Princeton Municipal Code discussing nonmetered parking zones. (*Id.* ¶ 33a.) This is the only chalking-related ticket Plaintiff alleges he received, but Plaintiff does not specify any details about the ticket itself: the ticket's form (paper, electronic, etc.), the manner in which Princeton issued it (placed on the Mazda's windshield, sent by mail, transmitted electronically, etc.), the person to whom the ticket was issued (if any), or otherwise. Second, Plaintiff alleges that

---

[1] Here and throughout his Complaint, Plaintiff asserts other conclusory statements of fact and recitations of legal elements in support of his claim. (*See, e.g.*, Compl. ¶¶ 19 ("Princeton engages in the practice of chalking in an arbitrary and capricious manner and selects vehicles [sic] for chalking and not others."), 20 ("Princeton has and continues as an on-going policy, custom, or practice in which its employees and agents chalk vehicles as a surveillance tool.").) Such allegations are insufficient to survive a motion to dismiss, and the Court need not recount them in outlining Plaintiff's allegations. *In re Energy Future Holdings Corp.*, 990 F.3d 728, 737 (3d Cir. 2021) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[2] Plaintiff alleges that he parks in these nonmetered zones because he "cannot park in the Princeton University parking lots nearest his office [at Sherrard Hall]." (Compl. ¶¶ 28–29.)

[3] Plaintiff additionally alleges that the gray Mazda "has been chalked several times beyond the three times directly observed by [Plaintiff]," but provides no other specifics on these other incidents. (Compl. ¶ 34.)

he observed a "chalking" on February 7, 2025, while the gray Mazda was parked in a nonmetered parking zone. (*Id.* ¶ 33b.) Finally, on October 20, 2025, Plaintiff alleges that he observed that the gray Mazda "had been chalked but at least one vehicle in the surrounding area was not chalked." (*Id.* ¶ 32.) Plaintiff alleges that Princeton did not have a search warrant, probable cause, or individualized suspicion of wrongdoing in connection with any of these chalkings. (*Id.* ¶¶ 35–36; *see also supra* note 1.)

Following the November 5, 2024 ticket, Plaintiff alleges that he "submitted a discovery request" to Princeton's municipal attorney. (*Id.* ¶ 21.) In response, Plaintiff alleges—without providing the documents himself—that he received (1) "A photo taken by Officer Glasson (the parking enforcement officer employed by Princeton) showing that [the gray Mazda] was chalked[,]" and (2) "A photograph of a page of the log book . . . made by Officer Glasson showing the streets he had engaged in the practice of emplacing chalk on vehicles and the applicable time."[4] (*Id.*) Plaintiff alleges that the log book chronicled chalking by Officer Glasson on October 17, 22, 23, 30, and November 5, 2024 across seventeen streets in Princeton. (*Id.* ¶ 22.) Plaintiff alleges that, in addition to Officer Glasson, he observed "at least one other parking enforcement agent" chalking parked vehicles. (*Id.* ¶ 23.)

### B. DEFENDANT'S EXHIBITS

As part of its Motion, Defendant includes various exhibits relating to Plaintiff's allegations that are not attached to the Complaint.[5] The "New Jersey Municipal Court Case Search"

---

[4] Plaintiff provides no first name for "Officer Glasson," and at other places in his Complaint spells his name "Glassen." (Compl. ¶¶ 21–23.)

[5] The Court may consider Defendant's attached exhibits in connection with its Motion. In evaluating a motion to dismiss, the Court may consider any "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Bucks v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006); *see also CNA v. United States*, 535 F.3d 132, 145–46 (3d Cir. 2008) (concluding that district courts may "make factual findings [in

("NJMCCS") reveals that Plaintiff may have received—at least at the time of the Opposition's filing—only two parking tickets in Princeton that were resolved in Princeton Municipal Court. (ECF No. 9-2 at 2–3, Ex. A.) Both of these tickets for "Overtime Parking" violations were issued pursuant to Section B19-21 of the Princeton Municipal Code—the section relating to *metered* parking zones not overseen or enforced through chalking. (*See id.* at Ex. A, Ex. B (ticket for overtime parking violation listing "Jake Freeman" on November 16, 2023 for $45 in connection with a gray, 4-door Mazda, paid in full on January 30, 2024), Ex. C (ticket for overtime parking violation listing "Jake Freeman" on October 30, 2025 for $45 in connection with a gray, 4-door Mazda, with last payment date listed as January 20, 2026).) Plaintiff does not reference either of these tickets in his Complaint.

By contrast, a search of the same database appears to reveal that a different individual—a Barry T. Freeman—received two tickets pursuant to Section B19-23 for exceeding parking limits in nonmetered parking zones.[6] (*Id.* at 3, Ex. D.) Plaintiff makes no reference to a Barry Freeman in his Complaint and does not clarify in his Opposition what relationship he has to Barry Freeman,

deciding a Rule 12(b)(1) motion], beyond the pleadings, that [are] decisive to determining jurisdiction"). In addition to being necessary to assess the Court's subject matter jurisdiction, the undersigned concludes that these exhibits are both (1) incorporated by reference into Plaintiff's Complaint and (2) public records of which this Court may take judicial notice. *See Mei v. Abdur-Rahman*, No. 25-17621, 2026 WL 2983336, at *1 n.4 (D.N.J. Oct. 5, 2026) (stating that a court may take judicial notice of judicial proceedings in state and municipal court). Defendant avers—and Plaintiff does not contest—that the various exhibits are from the public New Jersey Municipal Court Case Search database. (ECF No. 9-2 at 2.) Furthermore, in the Complaint, Plaintiff explicitly references his receiving "parking tickets because of the use of marking 'chalk' placed on his vehicles" and specifically asserts that on November 5, 2024, "a ticket was issued" in connection with a chalking. (Compl. ¶¶ 4, 33a.) Given his explicit reliance on this and other tickets in the Complaint, the public nature of the municipal database, and the relevance of the exhibits to the Court's jurisdiction, the Court will consider Defendant's exhibits in deciding its Motion. *See Bucks*, 452 F.3d at 260; *CNA*, 535 F.3d at 145–46.

[6] The submitted record on Barry Freeman's tickets also shows a ticket he received pursuant to Section B19-21 in a metered parking zone on December 6, 2023. (ECF No. 9-2 at Ex. D, Ex. E.) Because this ticket was not discussed in the Complaint and would not have been issued because of chalking, it is not relevant to deciding the instant Motion.

if any. The first nonmetered parking zone ticket appears to have been issued to Barry Freeman on November 5, 2024 for $56.65 for parking in excess of two hours on Moore Street. (*Id.* at Ex. F.) The ticket lists a "PEO G GLASSEN" as an officer involved in the ticket. (*Id.*) The ticket lists the offending vehicle as a gray, 4-door Mazda. (*Id.*) Barry Freeman pled "Guilty" to this ticket on December 18, 2024, paying the fine in full on that date. (*Id.*)

The second nonmetered parking zone ticket naming Barry Freeman as Defendant is dated February 7, 2025. (*Id.* at Ex. G.) This ticket, totaling $56.65 for exceeding two hours of parking on Prospect Avenue, was also issued in connection with a gray, 4-door Mazda, and again lists "PEO G GLASSEN" as an officer involved. (*Id.*) Barry Freeman pled guilty to this ticket on March 27, 2025, and paid the fine in full that day. (*Id.*) Neither of these two tickets reference Plaintiff in any way, although they occurred on precisely the same dates as two of the chalkings alleged in the Complaint. (*Id.* at Ex. F, Ex. G; Compl. ¶ 33.) Plaintiff's Complaint, however, only alleges that the November 5, 2024 chalking incident resulted in a ticket; he makes no mention of a February 7, 2025 ticket at all. (Compl. ¶ 33.)

### C. Procedural History

On March 2, 2026, Plaintiff filed his Complaint. (Compl.) Plaintiff asserts a single Section 1983 count for Fourth Amendment violations resulting from Princeton's chalking policy.[7] (Compl. ¶ 51.) Plaintiff seeks (1) declaratory and injunctive relief prohibiting future chalking as a violation of the Fourth Amendment, (2) nominal damages, (3) disgorgement of "any monies obtained as result [sic] of [Defendant's] unconstitutional and illegal conduct," and (4) other fees and expenses. (*Id.* ¶ 54.)

[7] Plaintiff's claim against Princeton—a local municipality—is brought pursuant to *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 690 (1978). (Compl. ¶ 51.)

On April 6, 2026, Defendant filed the instant Motion. (MTD.) Plaintiff opposed. (Opp.) Defendant replied. (Reply.) The Court then granted Plaintiff's request for leave to file a sur-reply under Local Rule 7.1(d)(6). (ECF No. 20; Sur-Reply; ECF No. 24); *PMC, Inc. v. Tomco Constr., Inc.*, No. 21-13470, 2021 WL 5413988, at *5 (D.N.J. Nov. 18, 2021) ("A surreply brief may be permitted by the Court to respond to new arguments raised in the reply brief.").[8]

Defendant filed its Motion pursuant to Rules 12(b)(1) and 12(b)(6), arguing that (1) Plaintiff lacks standing, (2) Plaintiff's claim is an impermissible collateral challenge of a criminal conviction contravening *Heck v. Humphrey*, 512 U.S. 477 (1994), and (3) Defendant's alleged chalking policy does not violate the Fourth Amendment. (MTD at 11–26.) In its Reply brief, Defendant asserts that the chalking policy is constitutional under the Fourth Amendment's administrative search exception. (Reply at 8–15.) Defendant's Motion is now ripe for decision.[9]

## II. LEGAL STANDARD

### A. RULE 12(B)(1) OF THE FEDERAL RULES OF CIVIL PROCEDURE

Under Rule 12(b)(1), a court must grant a motion to dismiss if it lacks subject matter jurisdiction to hear the claim. Fed. R. Civ. P. 12(b)(1). In evaluating a Rule 12(b)(1) motion to

[8] While Defendant's Motion was pending, Plaintiff moved to compel a Rule 26(f) conference, requested that the Clerk issue subpoenas, and sought to open discovery. (ECF Nos. 10, 17.) Following a teleconference with the parties, the Honorable Rukhsanah L. Singh, U.S.M.J., denied Plaintiff's requests and stayed all discovery pending resolution of the instant Motion. (ECF No. 27.) In light of the Complaint's dismissal herein, discovery will remain stayed until further order of the Court.

[9] On August 31, 2026, Plaintiff filed a letter-motion for leave to file a "Notice of Supplemental Authority" directing the Court to recent developments in relevant caselaw. (ECF No. 29.) The Court granted Plaintiff's Motion. (ECF No. 30.) On October 2, 2026, Plaintiff filed another such letter-motion, providing additional Fourth Amendment caselaw. (ECF No. 31.) Defendant filed a response, (ECF No. 32), and Plaintiff replied, (ECF No. 33). The Court will **GRANT** Plaintiff's motion but will not consider any arguments contained in either of the letters. *See Atkins v. Capri Training Ctr., Inc.*, No. 13-06820, 2014 WL 4930906, at *10 (D.N.J. Oct. 1, 2014) ("Generally, if pertinent and significant authorities come to a party's attention after the party's brief has been filed, the party may advise the court of the relevant authority through a Notice of Supplemental Authority; however, a Notice of Supplemental Authority should not advance new arguments . . . ." (citing *Beazer E., Inc. v. Mead Corp.*, 525 F.3d 255, 264 (3d Cir. 2008))).

dismiss, courts must first determine whether the motion "presents a 'facial' attack or a 'factual' attack on the claim at issue, because that distinction determines how the pleading must be reviewed." *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 357–58 (3d Cir. 2014) (quoting *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012)). "A facial 12(b)(1) challenge, which attacks the complaint on its face without contesting its alleged facts, is like a 12(b)(6) motion in requiring the court to consider the allegations of the complaint as true." *Hartig Drug Co. v. Senju Pharm. Co.*, 836 F.3d 261, 268 (3d Cir. 2016) (internal quotation marks omitted). A factual challenge, on the other hand, "attacks allegations underlying the assertion of jurisdiction in the complaint, and it allows the defendant to present competing facts." *Id.* The "trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case" and "the plaintiff will have the burden of proof that jurisdiction does in fact exist." *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). "Therefore, a 12(b)(1) factual challenge strips the plaintiff of the protections and factual deference provided under 12(b)(6) review." *Hartig Drug Co.*, 836 F.3d at 268. The party invoking the federal court's jurisdiction has "the burden of proof that jurisdiction does in fact exist." *Petruska*, 462 F.3d at 302 n.3 (quoting *Mortensen*, 549 F.2d at 891).

### B. RULE 12(B)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE

For a complaint to survive dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see Clark v. Coupe*, 55 F.4th 167, 178 (3d Cir. 2022). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. When assessing the factual allegations in a complaint, courts "disregard legal conclusions and recitals of the elements of a cause of action that are supported only by mere conclusory statements." *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023). The court accepts all allegations in the complaint as true and gives the plaintiff "the benefit of every favorable inference to be drawn therefrom." *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992). "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555. The defendant bringing a Rule 12(b)(6) motion bears the burden of "showing that a complaint fails to state a claim." *In re Plavix Mktg., Sales Pracs. & Prod. Liab. Litig. (No. II)*, 974 F.3d 228, 231 (3d Cir. 2020) (citing *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016)).

In deciding a Rule 12(b)(6) motion, a court can only consider "the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). A court may also consider any document "integral to or explicitly relied upon in the complaint" when ruling on a motion to dismiss. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (cleaned up).

## III. DISCUSSION

Defendant challenges—and the Court has an independent obligation to consider—Plaintiff's Article III standing to bring his Section 1983 claim. (MTD at 11–21); *Wayne Land & Min. Grp., LLC v. Del. River Basin Comm'n*, 959 F.3d 569, 574 (3d Cir. 2020). Article III limits federal courts' jurisdiction to "cases or controversies." U.S. Const. art. III, § 2. The doctrine of standing is one of the "landmarks" that identifies justiciable cases and controversies referred to in Article III. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "Standing is a question of subject matter jurisdiction." *Petroleos Mexicanos Refinacion v. M/T King A (Ex-Tbilisi)*, 377 F.3d 329,

334 (3d Cir. 2004). "Absent Article III standing, a federal court does not have subject matter jurisdiction to address a plaintiff's claims." *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006). To establish standing (and thus jurisdiction), a plaintiff must show that he or she "has suffered, or will suffer, an injury that is 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" *Murthy v. Missouri*, 603 U.S. 43, 57 (2024) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)).

As part of this standing inquiry, Section 1983 plaintiffs only have standing to assert claims for invasions of "*personal* right[s]." *Three Rivers Ctr. for Indep. Living, Inc. v. Housing Auth. of the City of Pittsburgh*, 382 F.3d 412, 422 (3d Cir. 2004) (emphasis added); *Bost v. Ill. State Bd. of Educ.*, 607 U.S. 71, 76 (2026) ("Under Article III of the Constitution, plaintiffs must have a 'personal stake' in a case to have standing to sue." (quoting *FDA v. All. For Hippocratic Med.*, 602 U.S. 367, 379 (2024))). Where plaintiffs attempt to assert claims for relief "on the legal rights or interests of third parties[,] . . . . the District Court lack[s] jurisdiction to entertain the matter." *Reihner v. County of Washington*, 672 F. App'x 142, 144 (3d Cir. 2016) (quoting *Powers v. Ohio*, 499 U.S. 400, 410 (1991)). This principle extends to Section 1983 claims brought for purported Fourth Amendment violations, because such "Fourth Amendment rights are personal and may not be asserted vicariously by third parties." *Hannah v. City of Dover*, 152 F. App'x 114, 116 (3d Cir. 2005) (citing *Rakas v. Illinois*, 439 U.S. 128, 133–34 (1978)) (holding that Section 1983 plaintiff could not assert Fourth Amendment violations on behalf of a family member); *see Jackson v. Bolandi*, No. 18-17484, 2020 WL 255974, at *5 (D.N.J. Jan. 17, 2020) (citing *Hannah* and concluding that parent-plaintiff lacked standing to pursue constitutional injuries to the plaintiff's child).

Whether a plaintiff has suffered a Fourth Amendment injury—and therefore has Article III standing—depends on whether that plaintiff has Fourth Amendment "standing" to challenge an alleged invasion of his or her privacy.[10] *United States v. Montalvo-Flores*, 81 F.4th 339, 342–43 (3d Cir. 2023). The individual asserting such standing bears the burden of establishing both an "actual (subjective) expectation of privacy," as well as an objective expectation of privacy "that society is prepared to recognize as reasonable." *Id.* (quoting *Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J., concurring)). In cases involving automobiles, this second, objective prong requires the individual to show "the strength of his interest in the car and the nature of his control over it." *United States v. Baker*, 221 F.3d 438, 442 (3d Cir. 2000). Although the individual need not own the car outright, he or she must demonstrate some sort of "protected property interest" in the vehicle at the time of the search, *United States v. Cabrera*, 651 F. App'x 118, 122 (3d Cir. 2016), or otherwise have a "legitimate expectation of privacy by virtue of the right to exclude," *Montalvo-Flores*, 81 F.4th at 343 (cleaned up) (quoting *Byrd v. United States*, 584 U.S. 395, 405 (2018)); *see also United States v. Jones*, 565 U.S. 400, 404 n.2 (2012) (concluding that criminal

[10] Courts have distinguished between Fourth Amendment "standing"—raised, typically, in the criminal exclusionary rule context—and Article III standing. Article III standing is jurisdictional, while Fourth Amendment "standing" is a substantive merits question. *See, e.g.*, *Byrd v. United States*, 584 U.S. 395, 410–11 (2018) (explaining that Fourth Amendment "standing" is simply a "useful shorthand" for describing the inquiry into personal Fourth Amendment rights). Although Fourth Amendment standing itself does not typically raise jurisdictional questions, courts in similar Section 1983 cases have treated the question of "personal [Section 1983] rights" as co-extensive with Article III standing. *Hannah*, 152 F. App'x at 116 (holding that Section 1983 plaintiff could not assert Fourth Amendment violations on behalf of a family member); *see Jackson*, 2020 WL 255974, at *5 (interpreting *Hannah*'s analysis as jurisdictional); *Franklin v. Borough of Carteret Police Dep't*, No. 10-1467, 2010 WL 4746740, at *4 (D.N.J. Nov. 15, 2010) (same); *cf. Bost*, 607 U.S. at 76 (plaintiffs must have "personal stake" for Article III standing). Indeed, this suggests that when a Section 1983 plaintiff has not personally suffered a Fourth Amendment violation—as in, has no Fourth Amendment standing—he or she also lacks *Article III* standing. Accordingly, as explained above, the Court determines that Plaintiff's failure to sufficiently assert Fourth Amendment standing strips him of Article III standing as well. Even assuming, *arguendo*, that Plaintiff's lack of a personal Fourth Amendment injury was only a *substantive* deficiency with his Complaint—and not a jurisdictional one—the Court would dismiss his Complaint for precisely the same reasons under Rule 12(b)(6). *See, e.g.*, *United States v. Baker*, 221 F.3d 438, 441–42 (3d Cir. 2000).

defendant had standing to assert Fourth Amendment rights for car registered to wife where it was uncontested that defendant was the "exclusive driver" of the car and "had at least the property rights of a bailee").

Plaintiff lacks Fourth Amendment standing. Construing the Complaint liberally, Plaintiff has sufficiently pleaded his subjective expectation of privacy by alleging throughout the Complaint that he did not grant Defendant "permission" or "consent" to chalk the gray Mazda in nonmetered parking zones. (Compl. ¶¶ 4, 26–27.) However, Plaintiff has pleaded no facts to support an objectively reasonable expectation of privacy. Although Plaintiff alleges that he "routinely drives and parks a gray Mazda sedan" in Princeton, he does not assert that he owns, leases, rents, was gifted, or is the "exclusive driver" of the referenced Mazda so as to show that he had a "legitimate expectation of privacy by virtue of [his] right to exclude" at the time of each chalking. *Jones*, 565 U.S. at 404 n.2; *Byrd*, 584 U.S. at 405. Plaintiff does not allege his "interest in the car and the nature of his control over it," and, therefore, Plaintiff does not assert a reasonable expectation of privacy in the gray Mazda.[11] *Baker*, 221 F.3d at 442.

The question of Plaintiff's interest in the car is further muddled by the publicly available tickets. The public NJMCCS database reveals no tickets for Plaintiff Jake Freeman on any of the alleged dates the Mazda was chalked.[12] Instead, on November 5, 2024 and February 7, 2025—two

---

[11] In his Opposition, Plaintiff asserts that the gray Mazda referenced is his property and argues that his quoting of relevant Fourth Amendment caselaw in the Complaint indicates that he has adequately pleaded that fact. (*See* Opp. at 9 (citing Compl. ¶ 39).) Plaintiff may not amend his Complaint with his Opposition to the Motion. *Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988). Further, Plaintiff's referenced portion of the Complaint is a conclusory recitation of the relevant Fourth Amendment caselaw, not an affirmative assertion of a property interest of any kind. (*See* Compl. ¶ 39 (quoting *Jones*, 565 U.S. at 413 (Sotomayor, J., concurring))); *see also Carr v. Sharp*, 454 F.2d 271, 272 (3d Cir. 1971).

[12] To the extent that Plaintiff alleges that *he* received tickets in connection with Defendant's alleged chalking, this is directly contradicted by Defendant's exhibits. (Compl. ¶¶ 4, 21, 33; ECF No. 9-2 at Exs. A, D, F, and G.) Plaintiff appears to have only received tickets in time metered zones. (ECF No. 9-2 at Ex. A.) Because there is conflict between the properly considered exhibits and the Complaint, "the exhibits control." *Vorchheimer v. Philadelphian Owners Assoc.*, 903 F.3d 100, 112 (3d Cir. 2018).

of the dates Plaintiff alleges he witnessed chalking—tickets were apparently issued in nonmetered parking zones to *Barry T. Freeman* for the parking of a "Grey" Mazda "4 door" vehicle, and Barry T. Freeman paid those financial penalties.[13] (*See* ECF No. 9-2 at Exs. F, G; Compl. ¶ 33.) Plaintiff is not noted on those tickets as the Mazda's true owner, the Mazda's driver, the person who paid the ticket, or otherwise. (ECF No. 9-2 at Exs. F, G.) Those tickets only list Barry T. Freeman. (*Id.*) If, in fact, the Mazda mentioned in the tickets is the same as the one described in Plaintiff's Complaint, and these tickets relate to the chalking incidents Plaintiff alleges, it would appear that Plaintiff is attempting to bring his Fourth Amendment claim on behalf of Barry Freeman, the person apparently ticketed. Such is insufficient to confer Section 1983 standing under the Fourth Amendment.[14] *Bost*, 607 U.S. at 76; *Reihner*, 672 F. App'x at 144; *Hannah*, 152 F. App'x at 116.

The true identity of the Mazda's possessor at the time of the alleged chalkings has further Article III standing implications where, as here, Plaintiff seeks prospective injunctive relief for future chalking. *See Reading v. North Hannover Township*, 124 F.4th 189, 196–97 (3d Cir. 2024)

---

[13] Plaintiff's other alleged incident of chalking on October 20, 2025—which does not appear in the NJMCCS database—does not save Plaintiff's claim. (Compl. ¶ 32.) Plaintiff's sparse allegations about that incident do not include any facts regarding Plaintiff's owning, possessing, driving, or parking the gray Mazda on that day: "Freeman has observed the [gray Mazda] chalked by Princeton while nearby vehicles were not chalked. Specifically, on October 20, 2025, Freeman observed the Vehicle had been chalked but at least one vehicle in the surrounding area was not chalked. This occurred in a non-metered time limited parking zone." (*Id.*) As such, this allegation still fails to demonstrate that Plaintiff had an objective expectation of privacy sufficient for Fourth Amendment standing. *Montalvo-Flores*, 81 F.4th at 342–43.

[14] Plaintiff suggests in his Opposition that Defendant's standing challenge is a "factual" attack on Plaintiff's standing, meaning the Court may not consider the ticket exhibits prior to Princeton's answer and discovery. (Opp. at 10.) Not so. As an initial matter, Plaintiff's failure to provide any facts relating to his interest in the gray Mazda renders his Complaint independently deficient as to standing—the Court need not rely on Defendant's exhibits. Further, because Defendant's exhibits are subject to judicial notice and, in fact, incorporated by reference into the Complaint, Defendant cannot be said to have presented "competing facts" in an effort to challenge Plaintiff's jurisdiction. *See supra* note 5; *Hartig Drug Co.*, 836 F.3d at 268. Even if Defendant's exhibits do constitute a "factual" challenge, Plaintiff has still not met his jurisdictional burden. Moreover, the Court was "permitted to make factual findings, beyond the pleadings, that were decisive to determining jurisdiction." *CNA*, 535 F.3d at 145–46; *see also id.* at 146 (finding that the plaintiff had "ample opportunity to be heard" on factual jurisdiction dispute where it filed opposing and sur-reply briefs).

(explaining how "past exposure to illegal conduct" is relevant to showing imminent future injury (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495 (1974)). If Plaintiff *himself* was not personally injured by alleged chalking, he cannot show that a "threatened [future] injury is certainly impending" to justify standing for a prospective injunction of Princeton's policy. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014); *Murthy*, 603 U.S. at 59 (explaining that a plaintiff is more likely to show standing for prospective injunctive relief for imminent injury if she can show "that she faces a continued risk of future [injury] that is likely to be traceable to that same defendant" and that "[c]onversely, if a plaintiff cannot trace her past injury to one of the defendants, it will be much harder for her to make that showing"). To have standing for forward-looking injunctive relief, it is Plaintiff's risk of future injury—and not Barry Freeman's—that must be "certainly impending" and not "speculative." *Clapper*, 568 U.S. at 409 (internal quotation marks omitted).

Accordingly, the Court concludes that Plaintiff lacks standing to pursue his Section 1983 claim. In light of the Third Circuit's decision in *Merritts v. Richards*, 62 F.4th 764, 772 n.4 (3d Cir. 2023), the Court will dismiss the Complaint on this threshold ground and must do so without prejudice. In the event that Plaintiff still seeks to pursue this litigation, the Court will grant Plaintiff leave to file a First Amended Complaint.[15] Consistent with the Court's discussion of Fourth

[15] Although it declines to reach the merits, the Court notes that—as the Ninth Circuit held in *Verdun v. City of San Diego*—municipal chalking policies for parking enforcement may be constitutional as "administrative searches," even where they occur without a warrant or individualized suspicion. 51 F.4th at 1046. Administrative search regimes are "designed to serve special needs beyond the normal need for law enforcement," and may be permissible under the Fourth Amendment where their primary purpose is not "to detect evidence of ordinary criminal wrongdoing." *City of Indianapolis v. Edmond*, 531 U.S. 32, 37 (2000) (cleaned up). To be permissible, courts must "find a favorable balance between the gravity of the public concerns served by the [administrative search], the degree to which [it] advances the public interest, and the severity of the interference with individual liberty." *United States v. Hartwell*, 436 F.3d 174, 178–79 (3d Cir. 2006) (cleaned up) (quoting *Illinois v. Lidster*, 540 U.S. 419, 427 (2004)). Where the Government's interest is strong and "the procedure is tailored to advance that interest while proving to be minimally invasive," such warrantless, suspicionless regimes may be acceptable under the Fourth

Amendment standing above, Plaintiff is directed—in the event he chooses to amend his Complaint—to clarify: (1) what property interest he has in the gray Mazda, if any, particularly on the days of the alleged chalking, (2) whether the Mazda referenced in the NJMCCS database is the same as the Mazda referenced in his Complaint, (3) who Barry T. Freeman is, if Plaintiff is aware, and Barry's relationship to Plaintiff, if any, (4) what interest Barry Freeman has in the Mazda, assuming the NJMCCS tickets and Complaint reference the same car, and (5) the factual circumstances surrounding the November 5, 2024, February 7, 2025, and October 20, 2025 alleged chalking incidents. These facts will enable the Court to make the necessary "fact-bound" determination of Plaintiff's "interest in the car and the nature of his control over it." *Baker*, 221 F.3d at 442. Because it dismisses the Complaint on standing grounds, the Court declines to address the remaining issues raised by Defendant's Motion.

---

Amendment. *Id.* at 181. Assessing San Diego's own chalk-based parking enforcement scheme, the Ninth Circuit—applying its own balancing test—concluded at summary judgment that similar factors weighed in favor of San Diego and permitted the chalking regime under the Fourth Amendment's administrative search exception. *Verdun*, 51 F.4th at 1042–46; *but see Taylor v. City of Saginaw*, 11 F.4th 483, 489 (6th Cir. 2021) (holding the opposite regarding the Saginaw's chalking practice).

Given the threshold standing issues discussed above and the preliminary state of this litigation, the Court declines to determine the applicability of the administrative search exception to Princeton's alleged chalking policy. *See Verdun*, 51 F.4th at 1035 (assessing chalking policy in context of broader summary judgment record); *Chinniah v. East Pennsboro Township*, 761 F. App'x 112, 117 (3d Cir. 2019) (requiring Fourth Amendment exception was not "apparent on the face of the complaint"); *see also Hassan v. City of New York*, 804 F.3d 277, 306 (3d Cir. 2015) (explaining that City defendant could not articulate its compelling state interest in policy until "after its Motion to Dismiss").

## CONCLUSION

For the foregoing reasons, Defendant's Motion is **GRANTED** and Plaintiff's Complaint is **DISMISSED WITHOUT PREJUDICE**. An appropriate Order will accompany this Opinion.

**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**

Dated: October 30, 2026